LLC v. Wild Waves, LLC, No. 06-2671, Professors Abramowitz and Huffmeister. Good afternoon. Arthur Abramowitz, appearing on behalf of Wild Waves. Welcome. Thank you. I would note, Your Honor, that at the outset of this case, the Nickels moved to reject what it characterized as a lease. And in response, Wild Waves objected and asserted that the lease was a part of an integrated contract for the sale of property. The bankruptcy court granted stay relief to the state court so that it could determine the nature of the contract. It conducted a six-day trial in which testimony was heard. And the state court came out with a holding, or he said, I am charged, I understand, with determining if such an enforceable oral contract to sell the pier existed. In other words, the agreement that wasn't signed for the sale of the pier, was that a valid contract? And the judge ruled that that was a valid contract. It doesn't decide yet for us today as to whether it is a separate contract, it is a, within a integrated transaction, or even if an integrated contract, supposedly, that is part oral, part written, that is divisible. Well, I think, is that a question? The question, I think, was answered by Judge Shelter, because what he could not do was to separate the two. He said that the lease and the contract were intertwined. But that's all dictated. I mean, the point is, he says on the record exactly what he's charged with doing. Is the sale agreement, or is the oral, is there an oral agreement to sell the pier? Answer, yes, that's the holding. I understand that. Now, the question is, how do we deal with that? Is that, as Judge Irena said, it's a separate contract. Alternatively, contracts. Alternatively, it's divisible. Well, I think that, with all due respect, I understand the court's perspective with regard to Victor, but it's said that the Judge Shelter made a determination that the agreement, meaning the sale and the lease were part of one transaction, where that transaction was reached in March of 1999. And I think that's very important, because Judge Irena simply got it wrong. He made a determination that there was one agreement in March and one agreement in May. But when he says, let's just look at this, I am satisfied beyond any hesitation that Nichols Midway and Wild Waves had reached an agreement that would require Wild Waves to lease a portion of the pier for three years and thereafter purchase it. Now, so in effect he's saying, okay, I'm answering what I was charged with. I think there was an agreement of sale. He then later goes on and says, I am further certain that the lease and the sale were two aspects of a thoroughly integrated agreement, whatever that means. But that's not what he was charged with. If that's... How do you make that a holding? I think you have to look at both the contracts. And I understand the distinction that you're making. You're saying that the lease is irrelevant because... You know, there was an easy way around it. He could have just had one contract. Well, that's exactly what he held. He did find that there was one contract. Well... There were two aspects of one contract. Did he really... If you go on to... When he's talking about the parole evidence and the question if it's an oral agreement and he says, Nichols suggested I should question the conclusion I have reached because an integration clause in the lease includes parole evidence of an oral agreement to the sale of the pier. I recognize that paragraph 35 of the lease provides that the parties have read this lease. It contains their full agreement. It may not be changed except in writing signed by the landlord and the tenant. Unquote. That language does not prevent the introduction of parole evidence with respect to a transaction not described in the lease. Now, does that not imply that there are two transactions, one described in the lease and the other described by parole evidence, which is the sale? I understand that. And I'm not trying to duck the question. There is no question that in the integration aspect, which is the very conclusion of the opinion, he's basically saying that insofar as he was concerned, the integration clause did not affect his conclusion that there was one integrated contract. And I think it's also important that when he referred to this, he referred to the lease and sale as two aspects of a thoroughly integrated agreement. And that the lease was one component of a transaction. He also said it was an intertwined nature of the transaction. All of these in the singular. And again, I think if you take the concept of the lease as a part of the agreement, this lease was nothing more than an expedient for early possession. That's what the judge held. He said that the lease was nothing more. In fact, when you look at it, the long-term lease, what he said was... Does that work against you, though? If you say it was an expedient for early possession, does that simply acknowledge that Judge Arenas is right when he said they were in possession, but it was under the lease. It wasn't under any sale contract. It was under a lease. I think it can work against me. And this is the hardest question that I've had to wrestle with in preparation. I think if I take the argument that I'm making, that it's a singular contract, and that we're under that particular contract, the question is, well, what is your position then if you didn't close under the sale agreement? Which is really one step beyond what you're asking. Yeah, but you can go ahead and go there. You don't even have to put it in hypothetical because you didn't close. Well, we didn't close because we were precluded from closing. But go ahead and respond to the question. Well, what I'm suggesting is to be absolutely consistent, in that scenario, Judge Seltzer determined that we did have a right to purchase, and that there was a three-year lease, and as such, if we didn't close within that three-year period, under his rationale, I think we would have either had to reach a new agreement with the landlord, which in that case, or the opposite So, I understand that you're saying that we were in there under a lease, but again, I think that that distinction was not made by Judge Seltzer, and I don't believe that it was dictated. I say that because he looked at those two as being aspects of one contract. Now, you make a lot in the briefing and the proceedings in the various sorts of courts involved here of the assertion that you have this contract, you have an entitlement, and that the other side anticipatorily repudiated this contract, but you had stopped paying money to the folks at Nichols, right? Absolutely. Okay. And Judge Uranus said, is that because you considered that the contract terminated? Yes. I'll come back to that. Yeah. Because that's a whole other set of issues. But the anticipatory repudiation, yes, in that respect. So, just assume for the sake of discussion for a moment that we actually saw things your way. Does the fact that you folks stopped paying have any impact on the relief that's available to you? And I want you to pay particular attention if you've got the district court opinion in front of you to the question that's left open there, footnote 13 on page 22. I understand you to be saying, you know, we want specific performance, et cetera, et cetera. But how can you have relief under 365I in light of, well? In light of the failure to make the $10,000 payment? Yeah. Because if you look at the contract, it says that $10,000 is due upon execution. And one of the problems that we had in this case was that they never returned a sales agreement signed. They sought to alter the terms, and in fact, at the trial, admitted that they never intended to sell it here to us. So, I think that that's a red herring. We're talking about an executed contract. In addition, let's look at the material. You're talking about a what? We were waiting for an execute, the execution. Waiting for an execution. Yes, I'm sorry. In other words, the $10,000 was due upon execution. That's one of the issues here. That's why there was never a signed agreement. So, how do we read, shall continue to make payments? Your position is, we never had any payment to make, because before we could make anything, they said, you're not getting it. Is that it? Well, again, I think if we are consistent and take the position that there was a unitary contract, we made over $300,000 in payments under the lease aspect of this agreement. We did make payments. It was only after the anticipatory breach that we stopped making payments. But you made lease payments for the lease, right? Right. That's correct. you really like. I understand. It was pretty clear about saying, there's a lease and there's a sale. There's two things going on. You may want to call it a single integrated agreement that's governing it, but there were two things happening here. And so, I'm trying to get an answer to the part of it. And I want you to correct me about that if I'm wrong. If your answer is, we paid under the lease and that's enough. If you're interpreting the fact that we didn't pay $10,000 under the agreement of sale, I would absolutely agree with you. I can't contest that. But I would also note that in terms of the dollar amount of the amount of the agreement of sale, which was $10,000 out of $5.5 million, it's somewhat insignificant. And I would also note that the record reflects, we stated this, that for many years there was never any demand for that payment. And again, the question that you're posing doesn't get around the issue of the bifurcation which you're talking about with the contracts. The problem that I have with this is though, is that Judge Irenas, even if you're saying that he was charged with trying to analyze the lease versus the purchase agreement, got it wrong by finding they were staged contracts. They were not. He said that all of, Judge Irenas' objections to this agreement in the singular were reached in March of 1999. And I think that's a very, very important aspect of this in determining what the nature of the contract was. It was one document. He took testimony. He reviewed the documents, the intent of the parties. In fact, when the parties tried to indicate, he specifically rejected the idea that one was, that they were independent of one another. I know that you can say, well, that's dicta. But the point is that the agreement was struck by the parties in March and not in sequence in March and then May. There's no way of getting around that. He misread the facts upon which he based his opinion. Do you still maintain though that Nichols repudiated the contract before filing? I do. I do. Well, if in the state court you say there was a valid agreement before Judge, before the state court. Correct. In the bankruptcy court, you then later claimed that the agreement was terminated by virtue of anticipatory repudiation. Is that correct? That is correct. Now in our court, you're saying, what, there's a valid agreement? Well, it depends. I say that because I believe, and we're arguing the alternative. That was a can of the answer. Excuse me? That was a can of the answer. Well, I'm trying to be as square as I can be because there are two alternative arguments. The first argument we have is that the agreement was terminated as a result of the anticipatory repudiation. If that occurs, there's a termination of the contract, especially as to the breaching party. But as to the non-breaching party, meaning wild ways, we really have three options. We can do nothing, we can pursue damages, or we can pursue the remedies under the contract if they're enforceable under state law. That gets me into the other question where you say, well, is it terminated? Stop for just a minute. Why don't you, just since we're on the point, address head-on the judicial establishment? That's fine. Why is that wrong? The perception, at least by the bankruptcy court, that you were saying one thing in front of Judge Seltzer and another thing in front of the bankruptcy court, and it couldn't be heard to make that anticipatory repudiation. The issue before the Superior Court was whether the parties entered into the sealed agreement. That was the issue. Wild Waves' position throughout has been that after entering into the sealed agreement, the debtor materially breached it. And thus, our position in the bankruptcy court was entirely consistent with the position in the Superior Court. We were only charged with finding initially whether or not there was a contract. The second question was, what is the status of that contract? So we do not feel that there was any contradiction in position. But the point, so how were you, they were trying to reject an executory agreement. That's correct. So you're saying there's not a contract. Well, first of all, they were trying to reject a lease, and we said there was no lease. Because this also, this is really where the import of Judge Irena's opinion is so critical. Were you still in possession of the peer, or 70% of the peer? We were in possession of at least 70% of the peer on an exclusive basis. We have different rights under 365I than we would have under 365H. Did you ever make any claim under 365H? No. We believed all along that we had a unified agreement. And this is why, when you said I was being candid, I had to flip-flop. And I'm flip-flopping because when you get to the 365 argument, I'm not suggesting to you for a moment that rejection terminates the contract. In fact, that's exactly what my adversaries are arguing. 365 is not a voiding statute. The purpose of 365, and again, I don't mean to be too simplistic, is really for the debtor's benefit so that it can determine damages for purposes of confirming plans and dealing with claims. I got it. And guess what? Judge Irena said it, too. In his prior day, he was one of the best bankruptcy practitioners in the state of New Jersey. I had experience with him, and I don't do that. And in every way, I am not denigrating Judge Irena's ability as a judge. We were classmates in law school. Well, having stood here and listened to the – I've read his name. Having stood here and heard prior arguments today, the last thing I'm going to do is impugn Judge Irena. I have a lot of respect for him, but it doesn't mean that I agree with him. And this is why I think 365I is so important. If I'm ruling that there was a lease, we would then have rights theoretically or were relegated to 365H for purposes of possession. However, we still have, even under Judge Irena's rationale, that separate contract of sale. And I'm suggesting that even if we do have just – we're relegated to that separate contract for sale where we're not in possession, we would still have a right under New Jersey law and under the cases of Brandram and the prior case of this court of Ben Franklin to specifically enforce that. If you still have a separate contract, why can't that be rejected? It can't be rejected because you can only reject contracts where there's going to be a claim that can be reduced to a monetary amount. In this particular case – Isn't an executory contract something of which the performance is yet to be done? Yes, that's correct. But, again, that goes to the executoriness. That gets to the first question. And more directly to the damages issue, you had put together – somebody had put together on behalf of Wild Ways a detailed list of anticipated damages associated with this, hadn't they? I would suggest that if you refer to the Ben Franklin case, that's exactly what happened, but it does not mean that the damages are adequate for this particular type of case. And I say that because in Ben Franklin there was also a damage claim, and the court said that's fine, but it didn't find that it was an available equivalent. And I think what you have in this situation, if you look at the rest of the opinion by Judge Irenas, is a situation where he is reading out or disposing summarily of Ben Franklin. And in the district court, Judge Irenas disregarded whether damages were a viable alternative and instead ruled that the availability of specific performance turned on whether damages could ever be awarded in lieu of specific performance under state law. New Jersey is a state that says there's a virtual presumption for specific performance. And the reason for that, it says that with regard to real property, there's a uniqueness of land and an inadequacy of monetary damages. So that the district court trivialized our equitable rights and claimed that it was comparable as opposed to... Let me interrupt you and ask you, if that were really the approach that we were to take, what meaning would 365i have? What would be left of it if you could take state law and contrary to what both the bankruptcy court and the district court said here, you could say specific enforcement in terms of the provisions of the bankruptcy code, including 365, which is laid out in excruciating detail on how to deal with these issues. Well, it's excruciating detail if you have possession under 365i. In other words, 365i, and this gets into the question of preemption that was raised by Judge Burns and Herring. But the question is, do you have possession pursuant to a sale agreement? And you're saying, well, we have possession pursuant to a lease, which was part and parcel of the sale agreement. That's what you're arguing. Yes, but if you nuke that, if you say that in fact it was bifurcated and Judge Irenas is correct that there was a lease, I'm suggesting that if you read or you follow the case law that was set forth in Ben Franklin, that with the rejection there is then a breach of that agreement by the debtor. And then you have to characterize the claim. That claim has to be determined as to whether or not it can be reduced to a monetary amount or not. That was the decision by COVEX in the Supreme Court case. In that particular case, they went through the legislative history and said at one point all claims could be discharged because all claims could be reduced to a monetary amount. The statute changed, and as a result of that, we believe that there are certain claims that are subject to state law-specific performance, and this would be one of them under a contract for sale. Thank you. May it please the Court, Brian Hoffmeister, Teach-Groh, on behalf of the Appellate Nichols Midway Peer LSA. Some question. When you had the adverse decision in the state court, how come you didn't appeal it? Your Honor, there was an application for an interlocutory appeal that was made to the appellate court for the state of New Jersey, and it was denied and that was taken up to the Supreme Court, which was also denied. So technically the opinion of Judge Seltzer is not final. It may be the law of the case, but it's not final because it is still interlocutory. There are other issues between parties, such as individual principles of Nichols and individual principles of Wild Waves that had cross-claims against each other, so there are remaining claims. But there is a ruling on a point of law, right? Absolutely. I'm not suggesting it's not the law of the case. Let me ask you to go straight to the question of integrate or not integrate. I know you know the record, but I counted no less than five times where Judge Seltzer in his letter of opinion calls this an agreement in the singular, an agreement in the singular. I'm looking at A188, page 189. Overwhelming evidence of the agreement in the singular. And he says, I was completely convinced by Mr. Wiener's testimony. Am I saying it right? Is it Wiener or Weiner? Wiener. Mr. Wiener's testimony, which of course was that it was a single agreement. And there's the assertion that this was simply one component of a transaction, page 190. And then there's yet another instance where he talks about this being an agreement, all before it gets to the point where he deals with the integration clause and then reemphasizes this is an agreement. So if there's one thing that ought to be abundantly clear out of this, it's that this judge thought when he was asked, what are we dealing with here? Is there an oral contract for sale? That, yeah, there's something and it's an aspect of one single agreement. Now you say that's not right. Explain why it's not right. And I'll do this in a couple stages if I may, Your Honor. First of all, if you look to the first page of his opinion, as Judge Ambrose noted earlier, this judge was asked to do one duty, was to find out whether or not there was an agreement of sale between the parties. Nothing more, nothing less, and he indicates right from the beginning, that was my charge. In doing that, he looked at the overall negotiations between the parties and he found, as he indicated in several spots as well, that there were two phases to a global concept. The global concept was the ultimate right to purchase the beer. Was it a global concept or was it an agreement? Because I understand your position on the case is this is some generalized agreement and I understand your position is, hey, everything else there is dicta. How do I square dicta with the repeated assertion that this is part of a single contractual arrangement, one agreement? Yes, there's a sale component to it, but it's all of a piece. In order to arrive at his conclusion, he had to acknowledge the separate nature of the two contracts. The first one was, as noted by Judge Roth, the fact that when they were talking about the integration clause in the lease, he said, I don't have to deal with that because that's a separate document and I can consider parole evidence regarding the existence of a contract of sale. He also discussed the fact that on, and if I try to note the page here, it's Wild Waves Appendix 186 in his opinion, he indicates that the testimony of the parties was consistent that their discussions regarding the lease and their discussions regarding the sale contract were discreet and unrelated. Now, your case does depend on the finding that this thing is dicta and therefore not the law of the case, right? I mean, if we were to look at this and say, no, this is fairly within the ambit of what the limited lifting of the automatic stay was and it was correct that it was a single agreement, does that knock you out of the bar? No, Your Honor, because I think our position is consistent. As noted by Judge Irenas on page 13 of his opinion on footnote 9, Judge Irenas indicates Judge Seltzer did not refer to the contract as integrated in the traditional legal sense. He was referring to them as an overall concept and that not all of the agreement was contained. Stop. Help me out. How do you, with all due respect to Judge Irenas, whether he was using the word integrated in a technical sense or not, I've just gone through with you five to six times where this judge talks about an agreement, the agreement, this is the agreement, this is the party's agreement, agreement. It's clear that there's two separate things happening in time in terms of timing, but how do you point at me, other than your ipsy-dixit assertion that couldn't have meant what he said, something in this letter where he's saying it's a global concept, it's really not the agreement? The last page of his opinion, in the last full paragraph, he indicates that Wild Waves entered into a binding agreement respecting the peer to which Wild Waves was to lease a portion of the peer pursuant to a lease. And then to purchase. And then to purchase the entire, not a portion, the entire peer in accordance with the terms contained in the written agreement that the oral contract requires. That's your best point for saying he saw this as two separate agreements. Two separate agreements. Two separate documents, an overall concept, but two separate enforceable agreements. And when you look at the two documents, as Judge Irenas went through, point by point, there's no mention in either document of the other. There's no cross provisions, no cross defaults, no option to purchase, no application of lease payments toward the purchase price. Should the background here, Mr. Hoffmeister, play any part in our understanding of that? Because one of the things that appears to emerge from Judge Seltzer's decision, as well as my recollection from bankruptcy, but clearly from Judge Seltzer's decision, is that this appears to have been structured in the way it was because your client wanted to beat a real estate broker out of a commission, not to put too fine a point on it. Whether you agree with that or not, that's an idea that's kicking around in this opinion that your client said, look, I don't want to sell it to you outright because then I'll have to pay a broker. Why don't we lease it to you? And then, after the term for the brokerage is up, then you buy it and then we don't have to pay the broker. Now, I understand you may not agree with that as factual history, but my question to you is, does history of that sort play any part in understanding what the intent of the parties were in reaching this structure? Well, I would answer that it's not on two levels. One, again, if you look at Judge Seltzer's opinion, he specifically says the testimony was consistent, that the discussions between the parties regarding the lease and regarding the contract were separate and distinct. They were not together. They were separate and distinct. And he says that's the testimony of the parties. Where does he say that? He says that the negotiations for the lease and the sale were separate and distinct. He says it's at Wild Waves 188. It would be in Judge Seltzer's opinion. One, two, three, four, five, six page, near the bottom of the first full paragraph. It starts on the left-hand column. The testimony was consistent. I'm having a hard time here. 188, the testimony was consistent. We're looking at the first full paragraph? Yeah, I think it's 186, Your Honor. It would be the fourth line up from that paragraph. All right. So let's just put it in the record. It says, and this is the sentence you're looking at, the testimony was consistent, and he's talking about consistent between who? Nichols' family and Mr. Weiner? The testimony of Mr. Weiner and the testimony of the Nichols' representative. But the discussion regarding the lease and the discussions regarding the sale were distinct and unrelated. Then he goes on to say, into the next paragraph, well, I'm sorry, over to the top of the next page, a description of the landlord's closing certificate and the financing documents circulated on behalf of Wild Ways and Nichols Midway here by the attorney for the proposed lender. Now, I may have misread this, but I understood that to be part of a description that the judge was laying for his later point that nobody gets a lender and allows an encumbrance by mortgage of a very large amount on a leasehold interest unless there's a relation between the lease and the contract of the sort that he, Judge Seltzer, thought there was. So I might have misread, and I'll have to go back and reread the portion you pointed to, but I thought that was part of his describing or talking about these two aspects of the single deal, including the mortgage. So your point's well taken. I'll look at it. As long as I'm talking about the mortgage, explain that part to me. How does that work in here? The fact that there's a mortgage as part of this whole deal, why is he wrong in viewing that as, yeah, this is a sale? It's all part of the sale. Well, he found that the party's intent to enter into a long-term lease and have a mortgage may have supported the party's understanding that there would ultimately be a right to purchase. But again, if you look at the documents, the lease document in paragraph 23 specifically provides that the landlord shall have access to the property to show it to other prospective purchasers. There's an understanding there that it may not be sold to Wild Waves. There's a lease addendum also executed which says if we sell the property and it's sold, you get your security deposit back. Not we apply it to the purchase price. The concept is that it may be sold to somebody else. So all of the... So this is just the most preposterous business decision by Wild Waves then, right? Because they invest millions of dollars in improvements on a pier that they may never own under your view of the facts. They have a 31-year lease. I mean, every business, not every business, but many businesses enter into business leases whereby they spend millions of dollars in tenant fit-ups and depreciate those fit-ups over the course of the years and get to utilize the property. This is no different. They protected that interest. The fact that the contract may or may not be allowed to be rejected by the bankruptcy court, the debtor chooses to try and do that if Judge Irena's decision is held up, will not affect their rights vis-à-vis the lease. They still have a lease in existence subject to arguments as to breaches by both parties. But putting that aside, there's 365H. They have those rights and remedies. The rejection of the contract doesn't disturb their tenancy as a tenant. And that's what their tenancy is. Their tenancy is not as a contract purchaser. Their right to possession under the contract, under the terms of the contract, does not start until they tender full payment and deed is delivered. Until then. Is it your position that to the extent that Judge Seltzer found an oral contract at sale, that that contract was repudiated by Nichols? Is it our position? To the extent that Judge Seltzer found an oral contract at sale to the pier, that Nichols then repudiated that contract? That's not our position that Nichols repudiated. Our position is that prior to Judge Seltzer's decision, prior to his decision, that Nichols refuted the existence of a binding agreement. And as noted by Judge Seltzer in his opinion, Nichols was adamant that until there was a final signed written agreement, that they did not intend to be bound. But nevertheless, Judge Seltzer found you were bound. At that point. But that was post-petition, after the bankruptcy had been filed. So there was no pre-petition anticipatory repudiation because the requisite intent can't exist until... Well, there had to be intent, or there couldn't be a contract. I mean, a contract doesn't flare into existence and then leap back in time retroactively. The finding by Judge Seltzer was there was a contract, which means the meeting of the minds that occurred before the petition constituted the formation of the contract, right? Isn't that the only way you can read Judge Seltzer's opinion consistent with basic contract law? I'm not disputing that. My argument is this, that the claim that we anticipatorily repudiated the contract is wrong from a legal standpoint. To anticipatory repudiate something, we have to acknowledge its existence and refuse or be unwilling to perform. We weren't unwilling or refusing to perform because we didn't want to go through with the deal. We said there was no deal. But Judge Seltzer says, looking at what was going on then, there was a deal. And then you refused to send the executed written contract back. So can I interpret that as repudiation? No. With all due respect, Your Honor, until somebody determines, as Judge Seltzer did post-petition, that yes, there is an oral contract, you guys said there was not, you guys were arguing there was, I've now decided there is an oral contract. We accept that now as being the law of the case. Do you have some authority for the legal proposition that it's not until some judge says there's a contract that contract rights are in place? Because that's what you're telling us. You're saying even though this judge found as a legal matter that there was a meeting of the minds and therefore a contract pre-petition, that you couldn't have repudiated because there really wasn't a contract until post-petition, Judge Seltzer told you there was a contract. That's what I just heard you say. I'm having a hard time with the basic legal reason. Well, the concept under anticipatory repudiation is that there is an agreement that exists to start out with. Which is what Judge Seltzer said there was. Well, but until there's an intent that needs to be established, and the intent is to refuse or be unwilling to perform. And our position wasn't that we were refusing to perform. We were saying you don't have an enforceable agreement because we never raised it. Now it turns out you were wrong, and there was, right? That's correct. But until a court adjudicated whether or not it existed, we couldn't have had the intent to terminate or repudiate something that we didn't believe existed. So then the contract's still in effect? The contract is still in effect? The contract is still executory. We've never taken the position that it's not. Now there are proceedings that... Isn't Judge Seltzer's conclusion that it's beyond executory? It is a contract. Well, but it's still executory. There's been no performance. Judge Seltzer said it existed. To that extent, I am not going any further as to the ultimate enforceability. He said, yes, there is a contract that exists, but I'm not going beyond that, and he says that right in the beginning. So the question then lies after the fact now whether or not there's been breaches that entitle maybe my client to seek to terminate based upon prepetition breaches, and those are going on right now in front of the bankruptcy court. There's a trial going on, and those issues are being litigated right now about prepetition breaches, both with the contract and the lease, and separately. Separate issues as to the lease breaches because each of them have separate provisions. A breach under the contract is not a breach under the lease, and they both have different default provisions. They're very separate in terms of their remedies and their rights. Thank you very much. Thank you. We'll hear from Mr. Abramowitz. I think it's important briefly to set the record straight with regard to the assertions about the record and the written opinion. Judge Seltzer referred to the Nichols Midway Pier position in that one paragraph that was cited. He then stated, incidentally, the page before that, what the position was of Mr. Wiener, so that he says, thus Mr. Wiener asserts the parties agreed upon all of the essential terms of their agreement by late March 1999, and it goes on to state that. He states that the next page, Nichols Midway Pier agrees that the discussions between the parties began, et cetera, et cetera, and then he says, only after all of the members of the Nichols family testified that when this dispute was identified, they determined not to proceed with any discussions respecting the pier, et cetera. But what's more important is that the judge then states that he took testimony and he reads at the bottom of A189, moreover, it comported with the logic of the story he, meaning Mr. Wiener, recited. It is difficult for me to believe that any owner of real estate, absent compelling circumstances, would agree to a lease of a portion of a pier for a period of 30 years, et cetera. Well, I understand your position on that, but you ought to address Mr. Hoffmeister's point, which is there was a statement here where, I mean, how do you put in context if you think it's out of context? The test, quote, the testimony was consistent with that, was consistent that the discussions regarding the lease and the discussions regarding the sale were discrete and unrelated. Are you talking about the page 186? Page 186. Well, again, I think. I think that, again, if you look at the preamble of what was stated, he is stating that that is their testimony. Their testimony is that it was consistent and that all of the Nichols' testimony was consistent, meaning that the testimony was consistent is within the context of the Nichols. Of the Nichols' position, not Nichols and Wiener together. I think that's correct because if you look at the opinion, the page before talks about Wiener's position. This paragraph talks about the Nichols' position, so that when you go to the later part of the opinion, he states he's, quote, completely convinced by Mr. Wiener's testimony. He throws out, he says, I don't find the Nichols' credible, so that he's throwing out their version of the story. He's throwing it out and saying essentially that this lease doesn't make sense on its own, that the contract doesn't make sense on its own, and when you get down to the argument that was just raised, well, it doesn't have certain provisions in the contracts. Well, there's a reason it doesn't have provisions. It's one deal. You sit back. You don't need the niceties of this because it was one deal. Seltzer was charged. Judge Seltzer was charged with whether there was a contract, and he could not make that finding. There was a sale agreement for real estate. Correct. But he couldn't make that finding without making a decision on the integration of the lease, and he's saying that the lease was nearly... Let me ask you this. Couldn't you probably have one of three things? You could have two separate contracts. You could have two parts of a unified contract, or you could have a divisible contract, if you like. Yes. I mean, that's quite possible. Well, like Judge Arena said, that is what the divisible is. Well, basically, he did try to interpret what Judge Seltzer meant, saying that he didn't really mean integrated in the traditional sense. He talked about it being interrelated, and there's a difference between interrelated and integrated. He also mentioned the fact that it was within the four corners of a document when Judge Seltzer is addressing two documents which stand for one agreement. Assume that it were an agreement, but it were divisible. Does Judge Arenas' logic follow appropriately from that? Well, I think you mentioned it on the... I think that you have to get to the intent of the parties. I think it depends. I can't say, because don't forget, Judge Arenas is reaching this conclusion without taking any testimony. He's acting essentially as an appellate court, not giving full faith and credit to the lower court's decision. I have one other item I'd like to correct. I made a misstatement, which I'd like to correct for the record. The debtor could reject our contract. I said that they could not reject it. They can reject it. However, that would mean that we would be left with two types of remedies. We would be left with damage remedies as to those damages which could be calculated under 101.5 A or B. But we would also have the right under Grand Ram and also under Ben Franklin to proceed with specific performance. Again, they are not mutually exclusive, and I think it's very important to get back to a question that I don't know that I answered that I think that Judge Jordan may have raised, if I could, which is that when you look at the preclusiveness of this, the whole idea of 365I is to prevent a hardship. The McCarran case— You chose the second option, right? You chose the option of specific performance. I'm choosing the option of specific performance because as I read Judge Irena's decision, I'm no longer a contract holder in possession under 365I. You don't want to be the debtor, do you? No, I don't. But I have no alternative, and that's why it's so harsh because there was no determination by Congress or by the makers of the code to excise out those people that hold claims that may be subject to state-right enforcement for specific performance. It did deal with 365I, but it did not say that there's no other rights that you would have. Do you know—and I evidently didn't understand— I understand the importance of this portion of the opinion as you say it's in Congress, but the discussion is discreet. I understand Mr. Hoffmeister's point, I think, that he was making the position that Nicholas Midway here has. But whether or not I've understood that line or not and had inappropriately linked it in my mind to mortgage stuff— talk about the mortgage, if you would, for just a moment, with Judge Ambrose or Judge Ross. Is there something about the mortgage that lends credence to Judge Seltzer's statement that this just would not have made any sense? And I'm putting it in my terms, obviously. I'm quoting. It wouldn't have made any sense for this deal to be anything other than what he found it because of the character of mortgage, in light of what Mr. Hoffmeister said, which is this is sort of basic fit-out and improvement sort of stuff that happens when lessees take possession. I'll tell you why it isn't. If I have a lease—I've never had a lease where the landlord says,  I'm going to let you put it on the entire parcel, which is what happened in this case. It would make no sense. The judge said that it would be absurd to enter into an agreement, unless it were a sale, to have Judge Seltzer make a determination that it would be absurd for anyone to prevent the ability to develop property by allowing a mortgage on the entire parcel and not just the lease parcel. Don't forget, this is a pier. It's a situation where we built the water park and 70% of the property, but we got a mortgage on the entire piece of property. Why? It doesn't make sense unless it's a sale. And the other thing that I think was skirted was that this judge said, look, this lease was an expedient to allow them to take possession. There may or may not have been a commission issue. But Mr. Weiner was charged with trying to do something to help the Nichols. Well, he did. He probably may have helped himself out of the property as well with the adage that no good deed goes unpunished, because this is a situation where the 30-year lease was a fiction to Judge Seltzer. The short-term lease is a fiction, and I think that the nail in the coffin is that 30-year lease that makes no sense unless you look at it as part of an overall purchase. Thank you very much. Thank you to both counsel for a well-presented case. Take the matter under advisement. The court will be adjourned. Thank you. Thank you.